In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-4151

DIANE AMES,

*Plaintiff-Appellant,*

*v.*

HOME DEPOT U.S.A., INCORPORATED,
a Delaware corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CV 06060—**David H. Coar**, *Judge.*

ARGUED SEPTEMBER 22, 2010—DECIDED JANUARY 6, 2011

Before MANION, TINDER, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Diane Ames sued Home Depot after she was terminated for coming to work under the influence of alcohol and failing a blood alcohol test. Ames claimed violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. The district court granted summary judgment in favor of

Home Depot on all of her claims, and she appeals. We affirm.

I.

Ames was first hired by Home Depot in November 2001. During orientation, she received a copy of Home Depot's Code of Conduct, which listed "Major Work Rule Violations" terminable upon a first offense. One of these violations was having detectable levels of alcohol as determined by a blood alcohol test.

For almost five years, Ames worked for Home Depot without incident. On September 15, 2006, Ames spoke with the store manager, Mike Mahon, about the fact that she had an alcohol problem and needed assistance through Home Depot's Employee Assistance Program ("EAP"). At this point, Ames's alcohol problem had not yet affected her work. In accordance with Home Depot's policy, Ames was put on paid administrative leave and was notified that she could return to work once she had received a treatment plan, obtained return-to-work authorization, and passed a return-to-work drug and alcohol test. On September 23, Ames signed Home Depot's Employee Assistance Agreement, which enrolled her into Home Depot's assistance program. The agreement stated in part:

> 4. I will be subject to periodic drug and/or alcohol testing during the remainder of my employment at Home Depot whether the Company has reasonable suspicion or not to believe drug or alcohol

abuse occurred at work or has affected my work performance . . . .

5. If I refuse to take a required drug and/or alcohol test or fail a drug and/or alcohol test at any time during the course of my employment at Home Depot, I will be immediately terminated.

Ames admits that she read the agreement before signing and did not object to it.

On October 18, after a one-month leave of absence with pay, Ames passed a drug and alcohol test and obtained authorization to return to work. Soon thereafter, Jose Peña became the new store manager. On November 18, at 7:35 a.m., Ames was pulled over by police and arrested for driving under the influence of alcohol. Although Ames was scheduled to work that day, she called the store and took a personal leave day without penalty. After the DUI was reported in the local newspaper, Ames's case manager at Home Depot, Clark Burton, was informed of the arrest. Burton tried unsuccessfully to contact Ames by telephone to notify her that the DUI arrest put her in noncompliance with the terms of the Employee Assistance Agreement. On December 6, Burton sent Ames a letter informing her that she had until December 15 to schedule an appointment at an alcohol treatment facility for an evaluation, as required to restore her compliance with the agreement. Burton then spoke with Ames on December 7 and gave her until December 18 to schedule her evaluation.

On December 8, Ames asked Peña for help rearranging her work schedule at Home Depot so that she could attend her Alcoholics Anonymous ("AA") meetings.

Peña asked Ames for documentation from her doctor and for more information regarding her AA meeting schedule. A few days later, Ames gave Peña her AA meeting schedule and a note from her primary-care physician, which stated: "Diane L. Ames has been under my care. She has been referred by me to Carol Russel, a licensed clinical social worker, for counseling, and she is seeing Dr. John Zhang for psychiatric medication management." The note did not say anything more regarding Ames's condition or whether she required medical leave.

Some time later, Ames told Burton that she had scheduled an appointment for her EAP-mandated evaluation in January. Ames stated that her delay in scheduling this appointment was due to some difficulty with her insurance plan and with finding a doctor who met the court's DUI counseling requirements.

On December 20, Ames had a conversation with Peña in which she disclosed several personal difficulties, including her marital problems and divorce, the arrest of her son on drug charges, perceived unfair treatment by previous supervisors, concerns regarding whether Home Depot would pay for the EAP-mandated evaluation, and the inadequacy of her current alcohol-treatment program. At the end of the conversation, Peña stated that he would inquire into whether Home Depot would pay for the EAP-mandated evaluation. Ames conceded in her deposition that she did not specifically ask for leave from her job during this conversation with Peña.

On December 23, Ames reported for her scheduled work shift. An assistant store manager told Peña that Ames was acting differently and smelled of alcohol. Peña observed that Ames was less responsive to conversation than normal, that she smelled of alcohol, and that she slurred her words. Peña called Gretchen Gallois, the human resources manager, who agreed that Ames should have a blood alcohol test. Ames was driven to a testing facility and had her blood drawn. A few days later, the laboratory reported that Ames's blood had tested positive for alcohol. Home Depot then decided to terminate Ames for violating its substance abuse policy. Peña scheduled a meeting for January 2 to tell Ames about her termination.

Following the December 23 blood alcohol test, Ames grew increasingly anxious that she would lose her job if the test result was positive and began drinking more. On January 1, 2007, Ames checked herself into the hospital. The next day, Ames was discharged from the hospital with instructions to start an outpatient alcohol-rehabilitation program. Because of her hospital stay, Ames did not attend her scheduled January 2 meeting with Peña. On January 10, Home Depot mailed a letter to Ames, which she received on January 11. The letter informed Ames that based on her violation of Home Depot's substance abuse policy, her employment was terminated as of December 23, 2006—the day she came to work under the influence of alcohol.

Ames filed suit in federal court claiming violations of the FMLA and the ADA. Home Depot moved for sum-

mary judgment. The district court granted Home Depot's motion on all of Ames's claims. Ames appeals.

## II.

We review de novo a district court's grant of summary judgment. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602 (7th Cir. 2009). Summary judgment is appropriate when there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "We view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 589 (7th Cir. 2008).

Under the FMLA, an eligible employee is entitled to up to 12 weeks of unpaid leave each year for a "serious health condition" that makes the employee unable to perform the functions of her job. 29 U.S.C. § 2612(a)(1)(D); *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008). An employer is prohibited from interfering with an eligible employee's exercise or attempt to exercise a right under the Act. 29 U.S.C. § 2615(a)(1). To prevail on an FMLA interference claim, Ames must establish: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Caskey*, 535 F.3d at 590.

The district court found that Ames had failed to establish the third element, that she was entitled to leave

under the FMLA. "An employee is entitled to leave under the FMLA if (1) she is afflicted with a 'serious health condition,' and (2) that condition renders her unable to perform the functions of her job." *Id.* A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Here, when viewing the facts in the light most favorable to Ames, she cannot establish that she is afflicted with a serious health condition. Substance abuse can qualify as a serious health condition, if treatment for substance abuse involves "inpatient care" or "continuing treatment by a health care provider." 29 C.F.R. § 825.114(a), (d) (2006).[1] At no time before December 23, the day she was terminated, did Ames go into inpatient care for her condition; her decision to check herself into the hospital on January 1 occurred well after she violated Home Depot's policy on substance abuse. In addition, Ames cannot establish that her substance abuse was a condition requiring "continuing treatment by a health care provider." *Id.* Continuing treatment must involve a period of incapacity of more than three consecutive calendar days. 29 C.F.R.

---

[1] The 2006 version of the FMLA regulations is cited here as this was the version in effect at the time of Ames's termination.

§ 825.114(a)(2)(i) (2006).[2] Also, the two-sentence letter from her primary care physician simply said he referred her to a clinical social worker for counseling, and to a specialist for psychiatric medication management. There is nothing in the record from either of those sources that show that as of December 23, Ames had a condition requiring this level of continuing treatment. In fact, Ames testified in her deposition that her alcohol use neither incapacitated her, nor affected her work performance. Based on the record, a reasonable factfinder could not conclude that Ames was afflicted with a serious health condition within the meaning of the

---

[2] The FMLA regulations also provide that "continuing treatment by a health care provider" can involve incapacity due to pregnancy or prenatal care, § 825.114(a)(2)(ii); incapacity due to a chronic serious health condition requiring periodic visits to a health care provider over an extended period of time, § 825.114(a)(2)(iii); incapacity which is permanent or long-term due to a condition for which treatment may not be effective, such as the terminal stages of a disease, § 825.114(a)(2)(iv); or a period of absence to receive multiple treatments for restorative surgery or for a condition that would likely result in a period of incapacity of more than three consecutive days in the absence of medical intervention, § 825.114(a)(2)(v). Ames did not argue to the district court or to this court (before her reply brief) that her condition fell under one of these provisions. Moreover, as the district court correctly noted, Ames cannot satisfy any of these provisions based on the factual record presented. *See Ames v. Home Depot U.S.A., Inc.*, No. 08 CV 06060, 2009 WL 4673859, at *6, n.1 (N.D. Ill. Dec. 2, 2009).

FMLA as of December 23, the day her termination for failing the blood alcohol test became effective. More-over, there is no evidence that Ames's condition rendered her unable to perform the functions of her job. *See* 29 U.S.C. § 2612(a)(1)(D). On the contrary, as just noted, Ames testified that her job did not suffer because of her alcoholism. Accordingly, Ames cannot establish that she was entitled to leave under the FMLA, and thus, her interference claim fails.[3]

Next, Ames argues that the district court erred in dis-missing her FMLA retaliation claim on summary judg-ment. Ames sought to establish retaliation under the direct method of proof. To establish an FMLA retaliation claim under the direct method, Ames "must present

---

[3] Although Ames's FMLA claim fails on the third element regarding whether Ames was entitled to FMLA leave, the parties spend much time arguing about the fourth element, namely, whether Ames provided sufficient notice of her intent to take leave from work. On this element, the district court ruled in Ames's favor, finding that there was a gen-uine issue of material fact regarding whether Ames's conversa-tions with Peña were sufficient to put Home Depot on notice, triggering a duty to conduct further investigation into whether Ames was entitled to FMLA leave. But as the dis-trict court correctly noted, the fact that she can establish the notice element is insufficient to defeat summary judgment on her FMLA interference claim. Accordingly, we need not address this issue further. *See Caskey*, 535 F.3d at 591 n.1 (de-clining to rule on whether the plaintiff provided sufficient notice after finding that the plaintiff had failed to establish that she was entitled to FMLA leave).

evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Caskey*, 535 F.3d at 593. Ames's claim fails as a matter of law because she cannot satisfy the causal connection element. Ames presents no evidence of a causal connection between her alleged requests for FMLA leave and the materially adverse actions of her employer, whether the claimed adverse action was the blood alcohol test or the termination: first, the requirement to take a blood alcohol test was in accordance with the terms of Home Depot's Employee Assistance Agreement to which Ames agreed; and second, the termination occurred only after Home Depot learned that the test result was positive, which was a terminable violation under the Assistance Agreement and Home Depot's Code of Conduct. Thus, Ames's FMLA retaliation claim was properly dismissed on summary judgment.

Ames also appeals the district court's conclusion that she had no valid claim under the ADA. Taking the record in the light most favorable to Ames, her ADA claims cannot survive summary judgment. For either a discrimination claim or a failure-to-accommodate claim, Ames must show that she has a disability under the ADA. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009); *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008). Alcoholism may qualify as a disability if it "substantially limits one or more major life activities." 42 U.S.C. § 12102(1). A substantial limitation is a limitation that renders an individual unable to perform a major life activity or that significantly restricts an indi-

vidual in performing a major life activity. 29 C.F.R. § 1630.2(j) (2010). Major life activities can include caring for oneself, sleeping, walking, and working. 42 U.S.C. § 12102(2). Ames cannot show that her alcoholism is an ADA disability because there is no evidence in the record that it substantially limited her major life activities. Ames presented no evidence that her alcohol problem substantially limited her activities at home. And again we refer to her testimony where she insisted that her alcohol problem did not affect her work performance. Additionally, her discrimination and failure-to-accommodate claims fail because the record establishes that Home Depot fired Ames because she came to work under the influence of alcohol. This was a failure to meet Home Depot's legitimate expectations for its employees, as Home Depot need not accommodate an alcoholic by overlooking such violations of workplace rules. *See* 42 U.S.C. § 12114(c)(4) (providing that an employer "may hold an employee . . . who is an alcoholic to the same qualification standards for employment or job performance and behavior that such [employer] holds other employees, even if any unsatisfactory performance or behavior is related to the . . . alcoholism of such employee"). And there is no evidence that Home Depot failed to accommodate Ames's requests to schedule her work around AA meetings; in fact, the evidence shows that Home Depot gave Ames time off with pay and assistance through its Employee Assistance Program.

## III.

The district court properly granted Home Depot summary judgment on Ames's claims under the FMLA and the ADA. Ames cannot establish that she had a condition entitling her to leave under the FMLA, that she suffered retaliation, or that she had a disability granting her rights under the ADA. We AFFIRM.